583 So.2d 1030 (1991)
Mauricio BELTRAN-LOPEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 73437.
Supreme Court of Florida.
July 11, 1991.
*1031 Nancy C. Wear, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen. and Michael J. Neimand, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Mauricio Beltran-Lopez appeals to this Court to review his conviction and sentence of death for the first-degree murder of Teresa Rodriguez. Beltran-Lopez additionally appeals his convictions for the second-degree murder of Bernardo Rodriguez, the attempted murder of Odanis Rodriguez, grand theft, and burglary. We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution.
The facts of this case are set forth in Espinosa v. State, No. 73,436 (Fla. July 11, 1991).
The jury recommended by an eight-to-four vote that Beltran-Lopez be sentenced to death.[1] The judge then sentenced Beltran-Lopez to death, finding in aggravation that (1) he previously had been convicted of a violent felony; (2) the murder was committed to prevent lawful arrest; (3) the murder was committed during armed burglary; and (4) the murder was especially heinous, atrocious, or cruel.[2] The judge found statutory mitigation of no significant criminal history and nonstatutory mitigation that Beltran-Lopez was a good son. Beltran-Lopez was additionally sentenced to life with a statutory three-year minimum for the second-degree murder, life for the attempted murder, five years for grand theft, and life with a three-year minimum for the armed burglary.
Beltran-Lopez's first claim is that the trial court should have severed his trial from Espinosa's. We have already rejected this claim in Espinosa. In that case, we noted that McCray v. State, 416 So.2d 804 (Fla. 1982), states that severance is not required simply because codefendants blame each other for the crime. Espinosa, slip op. at 6-8. The key is that each defendant has the opportunity to cross-examine the other if the other chooses to testify. Id. We then further stated:
Under this standard, Espinosa and Beltran-Lopez were clearly not entitled to separate trials. The fact that Espinosa testified at trial and was subject to examination *1032 by Beltran-Lopez's attorney is not a sufficient reason to grant severance. Further, Espinosa was not prejudiced by an inability to cross-examine Beltran-Lopez during the guilt phase since Beltran-Lopez did not testify and the state did not attempt to introduce Beltran-Lopez's confession. Beltran-Lopez did testify during the penalty phase, but Espinosa was able to cross-examine him. No evidence was introduced in this trial that could not have been introduced against either Espinosa or Beltran-Lopez if either had been tried alone. Therefore, we find that Espinosa and Beltran-Lopez were not entitled to a severance.
Id. at 8. Beltran-Lopez also claims that the trials should have been severed to protect his right to a speedy trial. We do not find where this was asserted as a ground for granting a severance. In any event, Beltran-Lopez never pursued the speedy trial remedy provided under rule 3.191(i), Florida Rules of Criminal Procedure.
Beltran-Lopez's next claim is that reversible error occurred because he was absent from several pretrial motion conferences. However, Beltran-Lopez was not prejudiced by his absence since these were motions he could not have assisted his counsel in arguing. See Roberts v. State, 510 So.2d 885 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988).[3] Further, Beltran-Lopez has not carried the burden of showing he was absent during any part of the actual trial. Id.
Beltran-Lopez next claims that the trial court should have granted his motion for acquittal at the close of the evidence. However, the evidence was clearly more than sufficient to withstand a motion for acquittal.
Beltran-Lopez's remaining claims pertain to the penalty phase of the trial. First, Beltran-Lopez claims that the death sentence should be vacated because his attorney was absent during part of a charging conference in which the trial judge, prosecutor, and Espinosa's counsel discussed whether a heinous, atrocious, or cruel aggravating factor instruction was still permissible after the United States Supreme Court's decision in Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Beltran-Lopez was not prejudiced because when his counsel did arrive his counsel was informed of the matters that had been discussed and allowed to adopt Espinosa's arguments and offer any additional arguments of his own. Further, we reject Beltran-Lopez's complaint with respect to the text of the heinous, atrocious, or cruel instruction, and we find that the evidence supported the existence of this factor in this case. See Espinosa, slip op. at 15.
We also reject Beltran-Lopez's claim that the judge should not have found that the murder was committed to prevent lawful arrest. In Espinosa we noted that Teresa could identify the defendants and had promised not to call the police if they would leave. See id. at 14. Further, the defendants sought out Odanis and stabbed her simply because she had seen them. Id. Beltran-Lopez claims that this aggravating factor should not apply to him as it does to Espinosa because he did not know the victims and, thus, they were less likely to identify him. This claim is meritless because Teresa had seen Beltran-Lopez for several minutes. Even if she had not learned his name, her acquaintance with Espinosa was likely to lead to him if she were permitted to live.
Beltran-Lopez's final claim is that the trial court erred in not instructing the jury on, and then failing to find, the statutory mitigating factors of acting as an accomplice and acting under the duress or domination of another. However, the trial judge clearly instructed the jury on these two mitigating factors. Further, the trial judge expressly considered and rejected these factors at sentencing, finding that *1033 the evidence established to the exclusion of every reasonable doubt that Beltran-Lopez participated in the killings. We find no error in this conclusion. We also reject Beltran-Lopez's claim that the trial judge should have found Beltran-Lopez's testimony and statement to the police as nonstatutory mitigation.
Finally, as we did in Espinosa, we considered and have rejected any applicable claims raised by Espinosa. Therefore, we affirm Beltran-Lopez's convictions and sentences.[4]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
KOGAN, J., dissents with an opinion.
BARKETT, Justice, dissenting.
Severance should have been granted. At the very least, an individualized sentencing procedure requires a separate penalty phase for each defendant.
KOGAN, J., concurs.
KOGAN, Justice, dissenting.
I dissent for the reasons stated in Espinosa v. State (Fla. 1991) (Kogan, J., dissenting).
NOTES
[1] The jury recommended the death penalty for Espinosa by an eleven-to-one vote, and he, too, was sentenced to death.
[2] § 921.141(5)(b), (d), (e), (h), Fla. Stat. (1985).
[3] Because the public defender was ultimately replaced on this case due to conflict of interest, we do not rule on whether Beltran-Lopez would have otherwise been prejudiced by his absence during the hearing on the motion to have counsel removed for conflict of interest and to have the trial severed due to conflict of interest.
[4] At the oral sentencing proceeding, the trial judge erroneously sentenced Espinosa and Beltran-Lopez to a three-year statutory minimum for the life sentence for the attempted murder of Odanis. However, his written sentencing order correctly does not include a statutory minimum sentence on that count. See Lopez v. State, 470 So.2d 58 (Fla.3d DCA 1985).