708 So.2d 590 (1998)
David Eugene JOHNSTON, Appellant,
v.
STATE of Florida, Appellee.
David Eugene JOHNSTON, Petitioner,
v.
Harry K. SINGLETARY, Respondent.
Nos. 88019, 89874.
Supreme Court of Florida.
March 5, 1998.
*591 Gregory C. Smith, Capital Collateral Regional Counsel; and Sylvia W. Smith, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, and Martin J. McClain, Litigation Director, Office of the Capital Collateral Regional Counsel, Southern Region, Miami, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
We have on appeal a decision of the trial court summarily denying David Eugene Johnston's amended motion for postconviction relief and Johnston's petition for a writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
Johnston was convicted and sentenced to death in 1984 for the first-degree murder of an eighty-four-year-old woman.[1] This Court affirmed in Johnston v. State, 497 So.2d 863 (Fla.1986). In 1988, after a warrant was signed for Johnston's death, he filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which motion included a challenge to the application of the heinous, atrocious, or cruel (HAC) aggravating circumstance. The trial court held that the HAC challenge was procedurally barred and after an evidentiary hearing denied the motion in its entirety. Johnston appealed the order and simultaneously filed a petition for a writ of habeas corpus. This Court affirmed the order and denied the petition, disposing of Johnston's HAC claim in a footnote which found that claim together with others to be either without merit or procedurally barred. Johnston v. Dugger, 583 So.2d 657, 662 n. 2 (Fla.1991).
Subsequently, the United States Supreme Court held that the standard jury instruction on the HAC aggravator, identical to the one given in Johnston's case, was unconstitutionally vague. Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Thereafter, Johnston instituted federal habeas corpus proceedings in which he attacked the HAC instruction given in his case. The federal district court judge concluded that on the face of our opinion upholding the denial of Johnston's motion for postconviction relief, she could not determine whether the rejection of the HAC claim was based on the independent state ground that it was not preserved for appeal. Thus, the court ruled:
Accordingly, because only the Florida courts can determine the proper approach to [Johnston's] sentencing, the writ of habeas corpus will be conditionally granted, within sixty (60) days from the date of this Order, unless the State of Florida initiates appropriate proceedings in state court. Because a new sentencing hearing before a jury is not constitutionally required, the State of Florida may initiate whatever state court proceedings it finds appropriate, including seeking a life sentence or the performance of a reweighing or harmless error analysis by the Florida Supreme Court.
Johnston v. Singletary, No. 91-797-CIV-ORL-22, at 28 (M.D.Fla. Sept. 16, 1993) (emphasis added).
Responding to the order of the federal district court judge, the State requested this Court to clarify our earlier rejection of Johnston's HAC claim. We did so in Johnston v. Singletary, 640 So.2d 1102, 1104 (Fla.1994), wherein we stated:
[D]uring the original proceedings in the instant case, Johnston did not object to the heinous, atrocious, or cruel jury instruction, nor did he request a special or more detailed instruction on this aggravating factor. Johnston's arguments were limited to challenging the constitutionality of the heinous, atrocious, or cruel aggravator itself *592 as being overbroad and vague, and to challenging the application of the aggravator to his case. On direct appeal, Johnston again failed to challenge the instruction. The first time Johnston raised the issue was in his rule 3.850 motion to the circuit court. Under our most recent opinion in Espinosa, the issue is clearly procedurally barred.
Even if the issue were not procedurally barred, "we are convinced beyond a reasonable doubt that the erroneous instruction would not have affected the jury's recommendation or the trial court's sentence." Id. The jury would have found Johnston's brutal stabbing and strangulation of the eighty-four-year-old victim, who undoubtedly suffered great terror and pain before she died, heinous, atrocious, or cruel, even with the limiting instruction. Further, there were two other strong aggravators and no mitigation present. The error was harmless beyond a reasonable doubt.
In March 1995 Johnston filed another postconviction motion (thereafter amended) to vacate his judgment and sentence. The trial court denied the motion without an evidentiary hearing. The court reasoned that the motion was time-barred because it had been filed more than two years from the date of this Court's 1986 opinion affirming the judgment and sentence on direct appeal.[2] The court rejected Johnston's argument that the time for filing was tolled by the intervening ruling of the federal district court. The court further held that even if the motions were not time-barred, the claims therein should be denied as an abuse of process because they were or should have been raised on direct appeal or in previous collateral proceedings.

3.850 APPEAL
Johnston argues that the court below erred in ruling that his motion was time-barred. As he did below, he contends here that the federal district court issued a conditional writ which operated to vacate his death sentence; that our 1994 decision constituted a reimposition of the death sentence which became final on February 27, 1995, when the United States Supreme Court denied certiorari review; and that the effect of this was to reset the time allowed for filing a rule 3.850 motion.
We disagree with Johnston's characterization of the effect of the federal court's order granting conditional relief and of our 1994 decision. Nothing in the language of the federal court order indicates that the court vacated Johnston's sentence, nor do the numerous cases he cites support the proposition that a conditional writ necessarily vacates a defendant's sentence. The language of the order makes clear that the federal court left it up to the State of Florida to determine what judicial proceedings were appropriate. Of course, if no action had been taken in response to the federal district court order, that court would have then vacated the sentence.[3] Here, however, at the State's request, we clarified that our earlier disposition of the HAC argument had been based on procedural grounds. Johnston, 640 So.2d at 1104. Furthermore, the same federal district court subsequently found that our proceeding had been held in accordance with its earlier order and denied Johnston's petition for habeas corpus. Johnston v. Singletary, No. 91-797-CIV-ORL-22, at 2-3 (M.D.Fla. Feb. 26, 1996). Because his sentence was never vacated, our 1994 decision was not a reimposition of Johnston's death sentence.
Our resolution of this first issue disposes of Johnston's claims three, four, five, six, nine, ten, and eleven.[4] In issue two, Johnston argues that the court below should *593 have granted a hearing on the failure of various state agencies to comply with his outstanding public records requests. However, the court did not err in denying the claim because at the Huff[5] hearing Johnston's postconviction counsel volunteered that while not waiving his right to make the public records requests, he was not going to pursue them at that time.[6]
Under claim eight, Johnston argues that he is entitled to a new sentencing order because his did not comply with the dictates of Ferrell v. State, 653 So.2d 367, 371 (Fla. 1995), which requires the sentencing judge to expressly evaluate in the written sentencing order each statutory and nonstatutory mitigating circumstance proposed by the defendant. As the State notes in its brief, Ferrell is a restatement of Campbell v. State, 571 So.2d 415 (Fla.1990), which we held was not a fundamental change in the law warranting retroactive application. Gilliam v. State, 582 So.2d 610, 612 (Fla.1991). Accordingly, this issue is also time-barred.

HABEAS CORPUS PETITION
The first issue in Johnston's habeas corpus petition alleges that our harmless error analysis in Johnston, 640 So.2d 1102, was improperly and unconstitutionally conducted, in that the opinion did not discuss the effect upon the jury of the absence of a proper HAC narrowing instruction. This argument ignores the fact that first and foremost, we found Johnston's HAC claim was procedurally barred, and only found harmless error in the alternative. Id. at 1104. There is no merit to this claim.
Next, Johnston argues that in conducting a harmless error analysis regarding the effect of the erroneous HAC instruction, we did not follow those cases where we remanded for resentencing rather than perform a harmless error analysis. See Hill v. State, 549 So.2d 179 (Fla.1989); Mikenas v. State, 367 So.2d 606 (Fla.1978); Elledge v. State, 346 So.2d 998 (Fla.1977). Again, this argument ignores our holding that Johnston's attack on the HAC instruction was procedurally barred. Moreover, the cases cited by Johnston are distinguishable. In these cases, the jury was permitted to consider an improper nonstatutory aggravating factor or the trial court had found an aggravator that was not proven by the evidence. Neither scenario occurred here.
Finally, Johnston takes issue with the collateral proceeding instituted in the wake of the federal district court's conditional writ. He argues that his direct appeal proceedings should have been reopened for a harmless error analysis and that our proceeding denied him a reliable individualized determination of the validity of his death sentence at trial and on direct review. We rejected this contention at the time the collateral proceeding was instituted. Obviously, the federal district court found no impropriety in the method chosen to clarify this Court's earlier opinion because it ultimately denied Johnston's petition for habeas corpus.
We affirm the well-reasoned order denying Johnston's amended motion for postconviction relief and deny his petition for writ of habeas corpus.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The trial court found three aggravating circumstances: (1) prior violent felony; (2) heinous, atrocious, or cruel; and (3) committed during the commission of a felony (burglary).
[2] The trial court pointed out that because Johnston's conviction predated the 1993 amendment to Florida Rule of Criminal Procedure 3.851, his motion was subject to the earlier two-year time limitation.
[3] In Smith v. Lucas, 9 F.3d 359 (5th Cir.1993), the federal district court issued a conditional writ, giving the state of Mississippi six months to correct the petitioner's sentencing defect. The court subsequently vacated the petitioner's sentence, but only after the state failed to take corrective action within the time specified. The Fifth Circuit Court of Appeals affirmed that portion of the order vacating the sentence. It is clear that the court's order granting conditional relief standing alone did not vacate the sentence.
[4] Those claims are (3) that Johnston was not competent at the time of his offense, during the trial, and at sentencing; (4) that counsel was ineffective at the penalty phase for failing to adequately investigate and develop mental health mitigating evidence; (5) that the trial court erred in giving great weight to the jury's recommendation because it was tainted by numerous errors; (6) that counsel was ineffective; (9) that Johnston's allegations of abuse by jail personnel and by the trial judge establish that his constitutional rights were violated; (10) that the State did not prove Johnston's guilt beyond a reasonable doubt; and (11) that the numerous procedural and substantive trial errors cannot be deemed harmless when considered cumulatively.
[5] Huff v. State, 622 So.2d 982 (Fla. 1993).
[6] According to Johnston, some of his public records requests were made in an attempt to investigate the role of Judith Bunker, a blood spatter expert, in training the State's blood spatter expert in this case. Related to this claim is Johnston's claim seven that information about Bunker's qualifications constitutes newly discovered evidence. We decided this precise issue adversely to Johnston in Correll v. State, 698 So.2d 522 (Fla. 1997).